# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| DONALD DUNN, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 4:20-cv-1093-CLM |
| ) | |
| KILOLO KIJAKAZI ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Donald Dunn seeks disability, disability insurance, and Supplemental Security Income ("SSI") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Dunn's application in an opinion written by an Administrative Law Judge ("ALJ"). Dunn argues that the ALJ erred in discrediting his subjective pain testimony.

As detailed below, the ALJ applied the correct legal standards and substantial evidence supports his decision. So the court will **AFFIRM** the SSA's denial of Dunn's application for benefits.

I.   **Statement of the Case**

   A.   **Dunn's Disability, as told to the ALJ**

Dunn was 51 years old at the time of the ALJ's decision. R. 29, 182. Dunn dropped out of high school in the 10th grade and reads at the 9th grade level. R. 42. Dunn has past relevant work as a construction worker II, cabinet maker, builder, and forklift operator. R. 60.

At the ALJ hearing, Dunn testified that he suffers from excruciating back and shoulder pain. R. 48, 53. Dunn also stated that all he can lift is a gallon of milk and that after picking up anything "with a little weight to it," he would be in bed for days. R. 49. According to Dunn, if he didn't take pain medication, he'd be in the hospital. R. 49–50. But even with medication, his pain is a 7/10 on the pain scale. R. 50. Though Dunn's shoulder feels better than before he had shoulder surgery, it still irritates him. R. 53.

Dunn's brother has to mow his yard for him. R. 56. And Dunn lies down in his recliner for about three hours between 8:00 AM to 6:00 PM each day. R. 56–57.

   B.   **Determining Disability**

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied.<br>If no, proceed to Step 2. |

| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
|---|---|---|
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| | *Determine Residual Functional Capacity* | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5). As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis. The intermediate step of determining Dunn's residual functional capacity is the most important step here, as Dunn's challenge flows from the ALJ's decision at this juncture.

## C. Dunn's Application and the ALJ's Decision

The SSA reviews applications for disability benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Dunn applied for disability insurance benefits, a period of disability, and SSI in September 2017, claiming that he was unable to work because of various ailments, including lumbar degenerative disc disease and right shoulder impingement. After receiving an initial denial in January 2018, Dunn requested a hearing, which the ALJ conducted in September 2019. The ALJ ultimately issued an opinion denying Dunn's claims in October 2019. R. 18–29.

At Step 1, the ALJ determined that Dunn was not engaged in substantial gainful activity and thus his claims would progress to Step 2. R. 20.

At Step 2, the ALJ determined that Dunn suffered from the following severe impairments: lumbar degenerative disc disease, status post extreme lateral interbody fusion at L2-3 and L3-4, followed by posterior spinal fusion; right shoulder impingement, rotator cuff tear with anterior instability, and adhesive capsulitis, status post arthroscopic surgeries. R. 20–23.

At Step 3, the ALJ found that none of Dunn's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 CFR

Part 404, Subpart P, Appendix 1. R. 23. Thus, the ALJ next had to determine Dunn's residual functional capacity.

The ALJ determined that Dunn had the residual functional capacity to perform light work with these added limitations:

- Dunn can only occasionally climb ramps and stairs.

- Dunn cannot climb ladders, ropes, or scaffolds.

- Dunn can occasionally balance, stoop, kneel, crouch, and crawl.

- Dunn can frequently reach overhead with his right dominant arm.

- Dunn must avoid all hazards, such as open flames, unprotected heights, and dangerous moving machinery.

R. 23–27.

At Step 4, the ALJ found that Dunn could not perform his past relevant work. R. 28. At Step 5, the ALJ determined that Dunn could perform jobs, such as laundry sorter and document specialist, that exist in significant numbers in the national economy and thus Dunn was not disabled under the Social Security Act. R. 28–29.

Dunn requested an Appeals Council review of the ALJ's decision. R. 1–5. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II. Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III. Legal Analysis

Dunn asserts that the ALJ erred when he discredited Dunn's subjective testimony about the severity of his back and shoulder pain.

An ALJ must apply the two-step "pain standard" to subjective testimony regarding pain and other symptoms. Under this standard, the claimant must first present "evidence of an underlying medical condition." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If he does, the claimant must then either: (a) present "objective medical evidence confirming the severity of the alleged pain," or (b) show "that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *See id.* This court "will not disturb a clearly articulated

credibility finding supported by substantial evidence." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

At the ALJ hearing, Dunn testified that he left work in 2017 to have back surgery. R. 48. And his back still causes him excruciating pain. *Id.* Dunn then explained that he experiences major pain, stiffness, and limited mobility. R. 49. Dunn also estimated that he couldn't lift more than a gallon of milk at a time. *Id.* Dunn then stated that even with medication, he isn't "really able" to tolerate his pain and the pain is a 7/10 on the pain scale. R. 50, 51. Though Dunn's shoulder feels better than before he had shoulder surgery, it still irritates him. R. 53. And Dunn says he lies down in his recliner for about three hours from 8:00 AM to 6:00 PM each day. R. 56–57.

The ALJ found that Dunn's medically determinable impairments could reasonably be expected to cause some of these alleged symptoms. R. 24. But the ALJ found that Dunn's statements about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id.* As explained below, substantial evidence supports the ALJ's finding that Dunn's lower back and right shoulder pain aren't as severe as he alleged at the ALJ hearing.

1. <u>Lower back injury</u>: As the ALJ explained, a March 2017 MRI of Dunn's lumbar spine revealed that Dunn had significant reactive changes at the L2-3 and

7

L3-4 levels. R. 413. The MRI also showed lateral recess narrowing and bilateral foraminal stenosis. *Id.* So in August 2017, around four months before Dunn's December 31, 2017 amended alleged disability onset date, Dunn had two fusion surgeries. R. 263–69.

Though several of Dunn's treatment records from before his surgery show that he suffered from chronic back pain, *see* R. 285, 281, 278, 274, the ALJ correctly noted that in September 2016 Dunn reported that his pain was "tolerable" and that his current medications let him carry out his activities of daily living. R. 288. During a primary care visit about three months after Dunn's fusion surgeries, Dunn's doctor noted that his chronic lower back pain was stable with his current treatment. R. 399. He also recorded that while Dunn's "[p]ain was severe at times," it was "well controlled with current dosage" of medicine. *Id.* On physical examination, Dunn's back was positive for paraspinal tenderness but negative for spinal tenderness, lower extremity hyporeflexia, or positive straight leg raise. R. 400.

A couple of weeks later, Dunn's surgeon, Dr. Seymour, noted that Dunn was "actually doing pretty well" and had improved since his surgery. R. 409. Though Dr. Seymour did note that it was likely unrealistic that Dunn could go back to his construction job. *Id.* Several of Dunn's later treatment notes show that Dunn reported that his medication was working well to control his pain. *See, e.g.*, R. 540, 499. Though, as the ALJ acknowledged, Dunn did report in May 2019 that he had such

high pain levels that he wasn't able to get much exercise. R. 596. And January 2018 physical therapy notes state that Dunn had limited range of motion and that sitting, standing, and bending aggravated his back pain. R. 424.

During a February 2018 orthopedic follow-up, Dunn reported "that he is in more pain now than he was even before surgery." R. 445. And x-rays suggested "a pretty significant amount of arthritic change at L5-S1 and some mild at L4-5." *Id.* So the Orthopaedic Center ordered an MRI, which showed a well-preserved spinal cord and no disc herniations or nerve root compression. R. 444. The MRI did, however, reveal "some pretty extensive hypertrophy at L4-5 and 5-1." *Id.* Even so, Dunn's February 2018 orthopedic physical examination showed no significant abnormalities. R. 445.

Following the MRI results, Dunn's orthopedist arranged for facet injections at L4-5 and L5-S1 "to see if this may help calm things down." R. 444, 447–50. Dunn reported that his first injection helped him even though he "still ha[d] some back discomfort." R. 443. About a month after the second injection, Dunn told his primary care physician that "his current level of pain is tolerable with medications." R. 465. And after the second injection, Dunn sought no more treatment from orthopedics for his back pain.

2. <u>Right shoulder impairment</u>: Dunn began reporting shoulder pain around August 2018. R. 494. Physical examinations of Dunn's right shoulder then revealed

decreased internal rotation, decreased abduction, and pain with abduction. R. 494, 500. And an MRI showed a partial thickness defect in the rotator cuff and subacromial narrowing. R. 503–04, 519–20, 522–23. Dr. John Greco then diagnosed Dunn with right shoulder pain, impingement, and rotator cuff tear with anterior instability. R. 507. He performed arthroscopic surgery in January 2019. R. 593–95.

Less than three months later, Dunn denied any right shoulder pain and stated that he had resumed all activities of daily living without difficulty. R. 551. But after Dunn stopped physical therapy, he began to report stiffness in his right shoulder. R. 583. On examination, Dr. Greco noted that Dunn lacked about 10 degrees of rotation, which he said, "is not horrible" but may have been "why [Dunn was] hurting." *Id.* To ease Dunn's pain, Dr. Greco performed an injection of Marcaine and dexamethasone, which Dunn said provided him with some relief. R. 584, 579. Based on these results, Dr. Greco thought that Dun would "do really well" and that he would do "a lot better" if he debrided Dunn's scar tissue. R. 579–80.

Dunn underwent the debridement procedure in July 2019. R. 619–22. He then immediately began physical therapy. Two days after the debridement procedure, Dunn rated his shoulder pain a 1/10 on the pain scale. R. 625. One week later, Dunn stated that his shoulder felt tight but denied feeling any pain. R. 627.

\* \* \*

This court may reverse an ALJ's credibility determination only if the ALJ "was clearly wrong to discredit" the claimant's subjective pain testimony. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). And the court cannot "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

A reasonable person could review the medical records discussed above and agree with the ALJ that Dunn's back and shoulder pain weren't as severe as he alleged at the ALJ hearing. And though Dunn argues otherwise, the ALJ didn't "cherry-pick" the evidence when evaluating Dunn's credibility. Instead, the ALJ cited to evidence favorable to Dunn, including some of the evidence that Dunn argues he ignored, such as examination findings of paraspinal tenderness and complaints of severe pain in February 2018. R. 24–26. Plus, an ALJ doesn't need to cite to every piece of evidence so long as this court can tell that he considered the claimant's "medical condition as a whole." *Mitchell*, 771 F.3d at 782. The court is satisfied that the ALJ considered Dunn's medical condition as a whole, especially considering that much of the evidence Dunn says the ALJ ignored predates his amended alleged disability onset date and surgeries. In short, the court sees no error in how the ALJ evaluated Dunn's subjective pain testimony.

## IV. Conclusion

In summary, the court has reviewed the parties' briefs, the ALJ's findings, and the record evidence and finds that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. So the court will **AFFIRM** the SSA's denial of benefits. The court will enter a separate final order that closes this case.

**DONE** on November 12, 2021.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE